IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Saint-Gobain Corporation; CertainTeed Corporation (Roofing Group); CertainTeed Gypsum, Inc.; Saint-Gobain ADFORS America, Inc.; and GS Roofing Products Company, Inc.;<br><br>   Plaintiffs,<br><br>v.<br><br>Missy Raye Littrell Miller,<br><br>   Defendant. | C/A No.: 2:14-1662-MBS<br><br><br><br><br>**O R D E R** |

This matter is before the court on Plaintiffs Saint-Gobain Corporation ("Saint-Gobain"); CertainTeed Corporation (Roofing Group) ("CertainTeed"); CertainTeed Gypsum, Inc. ("CTG"); Saint-Gobain ADFORS America, Inc. ("ADFORS"); and GS Roofing Products, Inc.'s renewed motion for preliminary injunction filed September 24, 2014. ECF No. 34. Defendant Missy Raye Littrell Miller ("Defendant") filed a response in opposition to Plaintiffs' renewed motion for preliminary injunction on October 14, 2014. ECF No. 41. Plaintiffs filed a reply in support of the motion for preliminary injunction on October 24, 2014. ECF No. 43. On October 31, 2014, the parties appeared before this court for a hearing on the renewed motion for preliminary injunction.

I. FACTS

Saint-Gobain is an international corporation with numerous subsidiaries, including the other named Plaintiffs in this action. While the division of Saint-Gobain involved in this action is based in the United States, Saint-Gobain's larger corporate group is based in France. Saint-Gobain

manufactures and supplies "interior and exterior building materials such as vinyl siding, piping and . . . roofing and gypsum products." ECF No. 1 at 3. With operations in sixty-four countries and 2013 sales that exceeded fifty billion dollars, Saint-Gobain is known as a world leader in many of its industries.

Defendant began working for Plaintiffs on or about March 7, 2005. ECF No. 10-1 at 12. Defendant held various positions with Plaintiffs and was eventually promoted to Quality & Process Engineering Manager for Glass Mat Operations at ADFORS' plant located in Charleston, South Carolina. ECF No. 14-1 at 3 ¶ 2. During her employment with Plaintiffs, Defendant became "essentially an expert in glass mat quality problems," which was the focus of her positions with Plaintiffs. Id. at 4 ¶ 3. As Defendant's responsibilities with Plaintiffs increased, she was given increased access to confidential "technical and business information . . . , including . . . manufacturing processes, methods, [and] drawings and designs related to developments, operations and improvements . . . ." Id. at 5 ¶ 6. In addition, during her employment with Plaintiffs, Defendant was a member of a Joint Development Team, which participated in a "highly-confidential project"[1] with CTG on a "certain gypsum product . . . ." Id. at 8 ¶ 13. To prevent the disclosure of its confidential information, Plaintiffs required that Defendant enter into multiple non-disclosure/non-competition agreements, including, but not limited to, the following: (1) Noncompete Employment Agreement (November 1, 2013); (2) Noncompete Employment Agreement (March 26, 2012); (3)

---

[1] Plaintiffs contend that the highly-confidential project was a joint venture between ADFORS and CTG involving the manufacturing of gypsum board products and the potential application of gypsum board products to the roofing industry. ECF No. 40-1 at 2 ¶ 7. Defendant states in her affidavit that any gypsum application to roofing was only mentioned once as a possibility, and that the unusual implementation of it, in her estimation, would be "light years away." ECF No. 41-5 at 3 ¶ 7. Defendant also notes that Atlas Roofing is a supplier to CTG and not a direct competitor to the best of her knowledge. Id. at ¶ 8.

Noncompete Employment Agreement (June 18, 2007); and (4) Employee Confidential Information Protection Agreement (March 7, 2005) (collectively, the "Employment Agreements"). Id. at 12. As paraphrased by Plaintiffs, Defendant's duties under the Employment Agreements included the following:

> [Defendant] has an ongoing duty and obligation . . . not to disclose any of Plaintiffs' Confidential and Trade Secret Information, and, for a **one-year period** following termination of her employment with Plaintiffs, not to engage in or contribute her knowledge to any work or activity that involves a product, process, apparatus, service or development which is then competitive with or similar to a product, process, apparatus, service or development on which she worked.

ECF No. 10-1 at 17 (emphasis in original). The actual provision reads, in pertinent part, as follows:

> I shall not, without written consent signed by an officer of the Company, directly or indirectly (whether as owner, partner, consultant, employee or otherwise), at any time during the one-year period following my termination of my employment with the Company, engage in or contribute my knowledge to any work or activity that involves a product, process, apparatus, service, or development (i) which is then competitive with or similar to a product, process, apparatus, service or development on which I worked or (ii) with respect to which I had access to Confidential Information while at the Company at any time during the period prior to such termination.

ECF No. 10-5 at 37. On April 2, 2014, after working for Plaintiffs for nine years, Defendant submitted her notice of resignation. ECF No. 1 at 4 ¶ 18. In her notice of resignation, Defendant indicated that she was accepting a position with Atlas Roofing Corporation ("Atlas Roofing"), a customer of Saint-Gobain and a direct competitor of CertainTeed and CTG in the "roofing, shingles, and gypsum industries." Id. at ¶¶ 19, 20; Id. at 13 ¶ 76. More specifically, Defendant accepted a position as Plant Manager of Atlas Roofing's plant in Hampton, Georgia. Although Defendant was never employed by CertainTeed, it is the position of the Plaintiffs that employment with a company

that directly competes with any subsidiary of Saint-Gobain violates the terms of the Employment Agreements. According to Plaintiffs, the Defendant's acceptance of a position with Atlas Roofing violated the terms of the Employment Agreements. On April 15, 2014, while Defendant was still employed with Plaintiffs, Plaintiffs allegedly attempted to meet with Defendant to "resolve the conflict of her new position with her post-termination obligations . . . ." ECF No. 10-1 at 10. Following the instructions of Atlas Roofing, Defendant allegedly refused to meet with Plaintiffs about her new position. Id. In a letter dated April 17, 2014, Dale Rushing ("Rushing"), Atlas Roofing's Vice President of Manufacturing, responded to an email from Ron Franklin ("Franklin"), ADFORS' glass mat operation manager, concerning Defendant's new position. In the letter, Rushing explained Defendant's duties and provided a written job description of Defendant's new position. ECF No. 14-1 at 11. Defendant terminated her employment with Plaintiffs on April 23, 2014. Id. at 4 ¶ 18.

On April 25, 2014, Plaintiffs filed a complaint in this court alleging (1) breach of contract; (2) breach of fiduciary duty; (3) violation of the South Carolina Trade Secrets Act; (4) violation of the Georgia Trade Secrets Act; and (5) violation of the Trade Secrets Acts of any other State in which Defendant discloses and/or uses Plaintiffs' trade secrets and confidential information.[2] ECF No. 1 at 2. Defendant answered Plaintiffs' complaint and filed counterclaims against Plaintiffs on April 29, 2014. ECF No. 7. Plaintiffs filed a Motion for Preliminary Injunction and a Motion for Expedited Discovery on May 2, 2014. ECF Nos. 10, 11. On July 14, 2014, this court held a hearing on Plaintiffs' motions. At the conclusion of the hearing, the court denied the request for a

---

[2]During the preliminary injunction hearing held July 14, 2014, Plaintiffs withdrew their claims with respect to the inevitable disclosure doctrine under South Carolina law. ECF No. 34 at 34.

preliminary injunction but granted the motion for expedited discovery. The court also granted Plaintiffs leave to renew the motion for preliminary injunction once limited discovery had been completed. After the completion of limited discovery, Plaintiffs renewed their motion for a preliminary injunction on September 24, 2014, seeking to prevent Defendant from being employed as a plant manager at Atlas Roofing for one year. ECF Nos. 34, 35.

## II. DISCUSSION

### A. Applicable Law

In an action that commences in federal court based on diversity of citizenship, the court must apply state law. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Since this action commenced in South Carolina, this court must apply the choice of law principles of the state of South Carolina in order to resolve this dispute. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941) (holding that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits).

Under South Carolina choice of law rules, the law of the jurisdiction where the contract was formed is generally applied. Unisun Ins. Co. v. Hertz Rental Corp., 429 S.E.2d 182, 184 (S.C. Ct. App. 1993). However, if the parties to a contract specify the law under which the contract shall be governed, South Carolina courts honor the parties' choice of law unless the application of foreign law results in a violation of South Carolina public policy. Nucor Corp. v. Bell, 482 F. Supp. 2d 714, 728 (D.S.C. 2007); see also Standard Register Co. v. Kerrigan, 119 S.E.2d 553, 541-42 (S.C. 1961) ("The contract . . . provides that it shall be construed according to the law of the state of Ohio, but

5

if it is invalid under the law of the State where it is to be performed and contrary to our public policy, we will not enforce it."). Here, the parties to the Employment Agreements specified that the agreements would be governed by Pennsylvania law. ECF No. 1-4 at 3 ¶ 12. Therefore, this court will utilize Pennsylvania law when analyzing the validity of the Employment Agreements, and then determine whether the application of Pennsylvania law results in a violation of the public policy of South Carolina.

**B. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy that temporarily grants the moving party relief that might be permanently granted at the conclusion of a trial on the merits. The Real Truth About Obama v. Fed. Election Comm'n, 575 F.3d 342, 345 (4th Cir. 2009). The party seeking a preliminary injunction must establish the following: "(1) a clear showing that it will likely succeed on the merits; (2) a clear showing that it is likely to be irreparably harmed absent preliminary relief; (3) the balance of equities tips in favor of the moving party; and (4) a preliminary injunction is in the public interest." United States v. South Carolina, 720 F.3d 518, 533 (4th Cir. 2013) (internal quotation marks and citations omitted). A moving party must make a clear showing that it is likely to succeed on the merits of his claim, and that it is likely to be irreparably harmed absent injunctive relief. The Real Truth About Obama, 575 F.3d at 345-47.

*1. Likelihood of Success on the Merits*

In this case, Plaintiffs have asserted three claims against Defendant–breach of contract, breach of fiduciary duty, and misappropriation of trade secrets–and Plaintiffs must make a clear showing that they will likely succeed on the merits of each of these claims. The likelihood of

success on the merits with respect to both the breach of contract and breach of fiduciary duty claims depends, at least in part, upon whether the Employment Agreements are enforceable. Defendant contends that the Employment Agreements at issue are unenforceable due to the lack of a geographical limitation. During oral argument, Plaintiffs countered, for the first time, that the Agreements do have a geographic limitation, which includes all of North America because North America is in the heading on each page of the contract. ECF No. 48 at 18-19.

In Pennsylvania, employment agreements not to compete are generally enforceable "if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." Hess v. Gebhard & Co., 808 A.2d 912, 917 (Pa. 2002). Although the lack of a geographic limitation generally renders a noncompete agreement unenforceable, courts have upheld covenants that either lacked a limitation or contained a broad geographic limitation as long as the limitation, or the lack thereof, was consistent with the scope of the employee's duties. See Victaulic Co. v. Tieman, 499 F.3d 227, 237 (3d Cir. 2007); Quaker Chemical Corp. v. Varga, 509 F. Supp. 2d 469, 476 (E.D. Pa. 2007). In Quaker, the defendant was the former senior market development manager for the plaintiff company, which produces products for the metal and metal-working industries. See Quaker Chemical Corp., 509 F. Supp. 2d at 472. While employed at Quaker, the defendant had numerous clients in both the steel and aluminum industries. Id. The defendant left Quaker to become the director of market development, metals division, for Stuart, Inc., which was a direct competitor with the plaintiff. Id. Although the noncompete agreement at issue had no geographic limitation, the court held that the agreement was still enforceable because the employers were international corporations in direct

competition with each other within a small market where they often vied for the same customers. Id. at 477. Thus, in Quaker, it was likely that Stuart would greatly benefit from the defendant's specialized knowledge of Quaker's operations anywhere in the world where the two companies were in competition. Id.

The factual scenario before this court is dissimilar to the factual scenario in Quaker. In Quaker, the defendant left the plaintiff company, where he had specialized knowledge of sales and marketing information on a national level, to go work for a direct competitor of the plaintiff company in a similar position. Here, Defendant has specialized knowledge of one concrete area, glass mat manufacturing from her employment at ADFORS, and resigned to go work for a customer of ADFORS, Atlas Roofing. Furthermore, Atlas Roofing does not produce glass mat at all, and there is no indication that it intends to stop purchasing glass mat from Plaintiffs. As noted previously, Defendant was never employed by CertainTeed, and has only visited CertainTeed's plants on a limited basis when it was necessary to perform quality control tests for CertainTeed on defective glass mat, which CertainTeed also purchases from ADFORS. There is no indication that Defendant's visits to CertainTeed's plants provided her with specialized knowledge of the manufacturing of shingles or the daily operations of a roofing plant that would be useful to Atlas Roofing as a competitor of CertainTeed. Therefore, it is not likely that precedent in Pennsylvania would support the validity of the Employment Agreements whether the geographic limitation is absent as Defendant contends, or if the limitation includes the entire continent of North America as asserted by Plaintiffs.

Even if an agreement with no geographic limitation is enforceable pursuant to Pennsylvania law, a South Carolina court would likely be unwilling to enforce such an agreement because it is

against the public policy of South Carolina. See Stonhard, Inc. v. Carolina Flooring Specialists, Inc., 621 S.E.2d 352 (S.C. 2005). In Stonhard, a case relied upon by Defendant, the South Carolina Supreme Court held that a noncompete agreement governed by the law of New Jersey was unenforceable because it lacked a geographic limitation, which is required under South Carolina law. The South Carolina Supreme Court's decision hinged on the fact that no New Jersey court allowed for the court to impose, or "blue pencil," a geographic limitation where there was none. Id. at 345. As in Stonhard, the Employment Agreements at issue do not contain a geographic limitation, which would render them unenforceable pursuant to South Carolina public policy unless the law of Pennsylvania would permit this court to "blue pencil" in a geographic limitation. Pennsylvania courts have indicated a willingness to impose, or "blue pencil" in, a geographic limitation even in the absence of an agreed upon geographic limitation by the parties. See Davis & Warde, Inc. v. Tripodi, 616 A.2d 1384, 1388 (Pa. Super. Ct. 1992) ("The covenant not to compete in the instant case, although limited in time, was not limited geographically. This does not necessarily impair the validity of the covenant, but any relief granted by the trial court must be geographically limited so as not to exceed that which is reasonably necessary to provide the protection for which appellant contracted."). In a recent decision from the Eastern District of Pennsylvania, the court, applying Pennsylvania law, issued a preliminary injunction enforcing a CertainTeed noncompete agreement after limiting the geographic area to the former employee's sales territory. CertainTeed Ceilings Corp. v. Aiken, Civ. Action No. 14-325 at *22 (E.D. Pa Oct. 27, 2014). In that case, the Pennsylvania federal court determined that limiting the geographic area to the former employee's

sales territory was reasonably necessary to protect the plaintiff's legitimate interest of preventing its customers from being poached.[3] Id. at *21.

Because Pennsylvania law seems to permit courts to "blue pencil" in a geographic limitation where none previously existed, it is not clear that the application of Pennsylvania law in this case would violate South Carolina public policy. Although Pennsylvania courts provide for partial enforcement of restrictive covenants, this court must determine whether the geographic scope of the employment agreement can be limited to an area that does not exceed that which is reasonably necessary to protect Plaintiffs' legitimate business interests. At this point in the proceedings, Plaintiffs have not demonstrated that the geographic scope of the Employment Agreements can be so limited.

### *a. Breach of Contract*

Plaintiffs assert that Defendant violated the Employment Agreements by accepting employment as a plant manager for Atlas Roofing. In order to prevail on the merits for breach of contract, Plaintiffs must prove the existence of a valid and enforceable contract, breach of the contract, and damages caused by that breach. See Consignment Sales, LLC v. Tucker Oil Co., 705 S.E.2d 73, 76 (S.C. Ct. App. 2010). As discussed above, it is not clear to this court that the Employment Agreements are enforceable pursuant to Pennsylvania law. As such, Plaintiffs have not made a clear showing of the existence of a valid and enforceable contract, which is necessary in order to establish Defendant's alleged breach. The court concludes that Plaintiffs have not met

---

[3] It is important to note that the court did not determine whether the agreement contained a geographic limitation or if the geographic limitation was North America as argued by the plaintiff. The court determined that under either interpretation, it had the authority to enforce the noncompete covenant within the former employee's former sales territory.

the burden imposed upon them to establish the likelihood of success on the merits of their breach of contract claim.

### *b. Breach of Fiduciary Duty*

Plaintiffs assert that Defendant was entrusted with confidential information through her employment with Plaintiffs. According to Plaintiffs, Defendant breached her fiduciary duty of loyalty to them by accepting employment with Atlas Roofing, which will require her to disclose Plaintiffs' trade secrets. ECF No. 1 at 15 ¶ 93. Under South Carolina law, Plaintiffs must prove that (1) a fiduciary duty existed, (2) Defendant breached that duty owed to Plaintiffs, and (3) Plaintiffs incurred damages as a proximate result of Defendant's wrongful conduct. See Turpin v. Lowther, 745 S.E.2d 397, 401(S.C. Ct. App. 2013). Plaintiffs assert that Defendant's fiduciary duty is implied through her possession of a trade secret, and that the duty was also established through the Employment Agreements. To the extent that Plaintiffs rely on the Employment Agreements to establish Defendant's fiduciary duty, Plaintiffs have failed to meet their burden to demonstrate that a duty exists because it is not clear that the Employment Agreements are enforceable. With respect to Defendant's implied fiduciary duty to Plaintiffs due to her possession of trade secrets, Plaintiffs have not demonstrated that they can prove that she breached that duty by using or disclosing those trade secrets. The court concludes that Plaintiffs have not made a clear showing they can prevail on their claim against Defendant for breach of fiduciary duty.

### *c. Misappropriation of Trade Secrets*

Plaintiffs assert that Defendant has violated the Georgia Trade Secrets Act by misappropriating trade secrets of the Plaintiffs.[4]   Specifically, Plaintiffs assert that in order to

---

[4]Pursuant to South Carolina choice of law rules, this court will apply the substantive law of the state where the injury occurred. See also Lister v. NationsBank of Delaware, N.A., 494 S.E.2d 449, 454 (S.C. Ct. App. 1997). Plaintiffs allege that Defendant misappropriated their trade secrets in the state of Georgia.

perform in her role as Plant Manager for Atlas, Defendant will necessarily have to disclose or use Plaintiffs' confidential and trade secret information. In order to prevail on a claim for misappropriation of trade secrets, Plaintiffs must prove that they possessed a trade secret, and that Defendant misappropriated the trade secret. Capital Asset Research Corp. v. Finnegan, 160 F.3d 683, 685 (11th Cir. 1998). Plaintiffs also have the burden of proving that the confidential information at issue is a trade secret. Id. at 685-86.

Here, Defendant does not dispute that the information Plaintiffs allege she had access to was a trade secret. Defendant also does not dispute that she has a continued obligation to protect those trade secrets. At issue is whether Defendant has actually disclosed, or will inevitably disclose, those trade secrets. In order to meet their burden under the preliminary injunction standard, Plaintiffs must make a clear showing that they can prove actual disclosure or inevitable disclosure.

With respect to actual disclosure, Plaintiffs had the opportunity to conduct limited discovery, including the taking of deposition testimony from Defendant. Plaintiffs assert that Defendant has extensive knowledge of glass mat specifications, knowledge of confidential CTG projects, and that she has had access to Plaintiffs' roofing plants at least twenty times such that she knows how Plaintiffs' roofing plants operate. Based on information gathered via limited discovery, Plaintiffs have not demonstrated that Defendant has disclosed any trade secrets of her former employer. It also appears to this court that Defendant's current employer has attempted to safeguard against any potential disclosure. ECF No. 41-5 at 21. Thus, Plaintiffs would have to demonstrate threatened disclosure, or that Defendant might inevitably disclose trade secrets in her current position.

Pursuant to the inevitable disclosure doctrine, Plaintiffs would have to demonstrate that:

> (1) the employers are direct competitors providing similar products and services; (2) the employee's position with the new employer has

12

>responsibilities similar to the position held with the former employer; (3) the employee will be unable to complete those responsibilities without relying on the former employer's trade secrets, and (4) the trade secrets are valuable to both employers.

Holton v. Physician Oncology Services, LP, 742 S.E.2d 702, 705 (Ga. 2013). It is not clear whether the inevitable disclosure doctrine is applicable pursuant to Georgia law. See id. at 706 (declining to address whether the inevitable disclosure doctrine may be applied to support a claim for threatened misappropriation of trade secrets). Furthermore, it is also not clear Plaintiffs would prevail if the doctrine does apply because Plaintiffs have not demonstrated that Defendant's position as a glass mat operations manager is similar to that of a plant manager for a shingles and underlayment division of the new company. Moreover, it is not clear that Defendant will be unable to perform her new job without disclosing confidential information learned from Plaintiffs.

Regardless, Plaintiffs have not demonstrated threatened or inevitable disclosure. Plaintiff repeatedly stated in her deposition that she had a steep learning curve with respect to the operation of a shingles and underlayments plant because her expertise is in glass mat. Miller Dep., p. 111, 138. Plaintiffs have not presented any evidence that Defendant has knowledge of the processes or procedures developed in creating CertainTeed's asphalt shingles. Defendant was not involved in the design, testing, research, or development that led to the creation of Plaintiffs' shingles. Even though evidence indicates that Defendant may have been privy to some discussion of the results of certain testing, Defendant did not retain any detailed information about the processes. Miller Dep., pp. 81, 90-94. The court concludes that Plaintiffs have not made a clear showing they will likely succeed on the merits of their claim for misappropriation of trade secrets.

*2. Remaining Equitable Factors*

Because this court has concluded that Plaintiffs cannot make a clear showing that they will likely succeed on the merits of their claims against Defendant, it is not necessary for this court to apply the other equitable factors for injunctive relief. Without establishing likelihood of success on the merits, Plaintiffs are not entitled to a preliminary injunction.

## IV. CONCLUSION

For the reasons stated, Plaintiffs' motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour<br>
Margaret B. Seymour<br>
Senior United States District Judge

Columbia, South Carolina
November 25, 2014